UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOSEPH C. DEREU,

                                        Plaintiff,

                    v.

ANDREW SAUL,
Commissioner of Social Security,

                                        Defendant.
_____

<u>DECISION AND ORDER</u>

19-CV-0164L

        Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security

("the Commissioner"). This action is brought pursuant to 42 U.S.C. §405(g) to review the

Commissioner's final determination.

        On August 19, 2015, plaintiff, then fifty-one years old, filed an application for a period of

disability and disability insurance benefits, alleging disability beginning April 16, 2014.

(Administrative Transcript, Dkt. #6 at 15). His application was initially denied. Plaintiff requested

a hearing, which was held November 7, 2017 via videoconference before Administrative Law

Judge ("ALJ") Michael Carr. The ALJ issued an unfavorable decision on April 16, 2018. (Dkt. #6

at 15-25).That decision became the final decision of the Commissioner when the Appeals Council

denied review on December 4, 2018. (Dkt. #6 at 1-3). Plaintiff now appeals.

        The plaintiff has moved for remand of the matter for further proceedings (Dkt. #15), and

the Commissioner has cross moved (Dkt. #20) for judgment on the pleadings, pursuant to Fed. R.

Civ. Proc. 12(c). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the decision appealed-from is affirmed.

## DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act follows a well-known five-step sequential evaluation, familiarity with which is presumed. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). *See* 20 CFR §§404.1509, 404.1520. The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002).

The ALJ's decision summarizes plaintiff's medical records throughout the relevant period, which include treatment for degenerative disc disease of the cervical spine, obesity, right cubital tunnel syndrome, and osteoarthritis, which the ALJ concluded together constituted a severe impairment not meeting or equaling a listed impairment. (Dkt. #6 at 17). Because plaintiff had indicated that he also suffered from depression and anxiety, the ALJ applied the special technique for mental impairments, and concluded that plaintiff has no limitations in understanding, remembering, and applying information; mild limitations in interacting with others; mild limitations in concentration, persistence and pace; and no limitations in adapting and managing himself. He therefore concluded that plaintiff's mental health impairments were non-severe. (Dkt. #6 at 19-20).

Upon review of the record, the ALJ found that plaintiff has the residual functional capacity ("RFC") to perform light work, except that he can no more than occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs. Plaintiff can never climb ladders, ropes or scaffolds. He

can no more than frequently push, pull, handle and finger with his dominant right upper extremity. (Dkt. #6 at 21).

At the hearing, vocational expert Joey Kilpatrick testified that an individual with this RFC could return to plaintiff's past relevant work as a telephone solicitor, both as it is generally performed, and as plaintiff previously performed it, and/or parts assistant manager, as that position is generally performed. (Dkt. #6 at 22, 64-65). The ALJ accordingly found plaintiff not disabled.

## I.     The Medical Opinions of Record

Plaintiff chiefly argues that the ALJ erred in failing to properly apply the treating physician rule to the opinion of plaintiff's treating family physician, Dr. Muhammad Ghazi, and neglecting to furnish "good reasons" for declining to grant Dr. Ghazi's opinion controlling weight.

In general, the opinion of a claimant's treating physician as to the nature and severity of his impairments is entitled to "'controlling weight' so long as it 'is well-supported . . . and is not inconsistent with the other substantial evidence in the case record.'" *Gough v. Saul*, 2020 U.S. App. LEXIS 949 at *2-*3 (2d Cir. 2020) (unpublished opinion) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). Conflicting opinions by other medical experts, including consulting physicians, "may constitute such [substantial] evidence." *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983). However, the Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination," *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)), since "a one-time snapshot of a claimant's status may not be indicative of [his or] her longitudinal mental health." *Estrella*, 925 F.3d 90 at 98. In determining whether to accord controlling weight to the opinion of a treating physician, factors to be considered by the ALJ include: (1) the nature and extent of the treatment relationship; (2) the evidence in support of the treating physician's opinion;

(3) the consistency of the opinion with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. § 404.1527(c).

In addition, the ALJ must articulate his reasons for assigning the weight he gives to a treating physician's opinion. *See Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). An ALJ's failure to apply the treating physician rule factors and give good reasons for declining to grant controlling weight is reversible error. *Id.*, 177 F.3d 128 at 134. "If, however, 'a searching review of the record' assures [the Court] that the substance of the treating physician rule was not traversed,'" and the record otherwise provides "good reasons" for the weight given to the treating physician's opinion, affirmance may be appropriate. *Estrella*, 925 F.3d 90 at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

Dr. Ghazi, a family physician, began seeing plaintiff in or around 2012 through at least August 2015,[1] and completed an RFC form on October 6, 2017. (Dkt. #6 at 564-68). Dr. Ghazi indicated that plaintiff's diagnoses were depression, anxiety, colitis, obstructive sleep apnea, and neck pain, with symptoms and objective signs that included depression ("controlled on meds"), anxiety, fatigue, restlessness, intermittent abdominal pain, and neck pain (treated with medication). Dr. Ghazi opined that plaintiff's symptoms would "frequently" interfere with his attention and concentration, that he was capable of low stress jobs, could sit for up to 30 minutes at a time up to 4 hours in a workday, and could stand for 15 minutes at a time for up to 2 hours in a workday. Dr. Ghazi indicated that plaintiff required the ability to change positions at will, would need unscheduled rest breaks "every hour" for 10-15 minutes, could only "occasionally" look up,

---

[1] Dr. Ghazi's treatment notes span April 2015 through August 2015. No explanation is provided for the absence of treatment notes from Dr. Ghazi before or after this period, although neither party now suggests that the record is incomplete. (Dkt. #6 at 32-33). Because the record contains treatment notes spanning the relevant period from a variety of other providers, including plaintiff's surgical records, and records from treating family physician Dr. Richard Blondell which run from February 2015 through at least June 2017, it does not appear that the lack of additional treatment notes from Dr. Ghazi – assuming that such records even exist – presents a significant gap.

"rarely" hold his head in a static position, and "rarely" engage in most postural activities. Dr. Ghazi was "unable to determine" plaintiff's ability to lift and carry or perform fine finger manipulations, but indicated that plaintiff's ability to finger was impacted by "trigger finger." Finally, Dr. Ghazi indicated that plaintiff's symptoms would cause him to be absent from work for 3 days a month, and generally opined that plaintiff needed to "avoid physical and emotional stress." *Id.*

The ALJ acknowledged that Dr. Ghazi was plaintiff's primary care physician, but gave "limited" weight to his opinion, on the grounds that: (1) the RFC form he used was largely in a check-box format "that does not provide analytical narrative to buttress the limitations identified"; (2) the opinion was dated after the plaintiff's last date insured; and (3) Dr. Ghazi's "treatment notes, showed only "routine and conservative treatment for the claimant's osteoarthritis, depression and anxiety," and did not "adequately support the relatively severe 'scoring' provided by Dr. Ghazi.'" (Dkt. #6 at 24).

In determining plaintiff's RFC, the ALJ instead deferred largely to the opinions of consulting geriatric medicine specialist Dr. Donna Miller, and consulting psychologist Dr. Susan Santarpia, which were respectively given "substantial" and "significant" weight, based on their familiarity with the Social Security disability program, their use of objective testing, and "consistency" of their opinions with plaintiff's ongoing conservative medical care and mental health therapy. (Dkt. #6 at 24).

Initially, with respect to the timing of Dr. Ghazi's opinion, the ALJ's reference to the fact that it was rendered after the "date last insured" was misplaced, given that it was based on Dr. Ghazi's treatment of plaintiff beginning in 2012 and continuing through at least August 2015: as such, it was relevant to the plaintiff's limitations during the relevant period, regardless of when it was written. *See Kudrick v. Commissioner*, 2020 U.S. Dist. LEXIS 97667 at *21-*22 (W.D.N.Y.

2020) ("information provided after the date last insured should be considered to the extent it sheds light on the [p]laintiff's condition as of the relevant time period")(quoting *Shook v. Commissioner*, 2013 U.S. Dist. LEXIS 44731 at *17 (N.D.N.Y. 2013). As such, the opinion's timing was not a "good reason" for the ALJ to have diminished its weight.

Plaintiff also argues that the ALJ improperly discounted the opinion due to its checkbox nature. While plaintiff is correct that an ALJ may not reject a medical opinion out of hand simply because it appears on a checkbox form, a lack of supportive clinical findings in any medical opinion – a deficiency to which checkbox forms are particularly vulnerable – is relevant to the ALJ's weighing of that opinion. As such, "good reasons" for discounting a treating physician's opinion may include the fact that the opinion was "merely [a] checkbox form[] that offer[s] little or nothing with regard to clinical findings and diagnostic results," particularly where, as here, the limitations indicated on the form are "inconsistent with the moderate findings reflected in the doctor['s] notes." *Heaman v. Berryhill*, 765 Fed. Appx. 498, 501 (2d Cir. 2019)(unpublished opinion). *See also Torbicki v. Berryhill*, 2018 U.S. Dist. LEXIS 133834 at *10 (W.D.N.Y. 2018). I therefore find no error in the ALJ's discounting of Dr. Ghazi's checkbox opinion to the extent that it lacked "analytical narrative." (Dkt. #6 at 24).

However, regardless of the ALJ's error in referring to the timing of Dr. Ghazi's opinion as a reason to discount it – and indeed, even assuming *arguendo* that there was some error in the ALJ's reference to the check-box nature of the form used – the ALJ did not reject the opinion solely for those reasons, but also weighed Dr. Ghazi's opinion on its merits, and considered its consistency with the record. The ALJ's finding that the more dramatic limitations identified by Dr. Ghazi were contradicted by his treatment notes and by other evidence of record is well-supported, and furnished a sufficiently "good reason" for assigning it "limited" weight. Plaintiff's

treatment records from Dr. Ghazi present wholly unremarkable findings, and suggest effective management of plaintiff's various conditions through medications. *See e.g.*, Dkt. #6 at 311-15 (February 23, 2015 treatment records: plaintiff followed-up for pulmonary nodule, with no other complaints and physical/psychiatric findings normal); 303-10 (April 24, 2015 treatment records: all constitutional, ENT, cardiovascular, respiratory, gastrointestinal, genitourinary, musculoskeletal, and neurological findings are normal, vital signs are normal, and physical and psychiatric exam is normal, although plaintiff reports feeling depressed and down for the past two weeks and complains of neck and lower back pain); 298-302 (May 29, 2015 treatment records: all constitutional, ENT, cardiovascular, respiratory, gastrointestinal, genitourinary, musculoskeletal, and neurological findings are normal, vital signs are normal, physical and psychiatric exam is normal, although plaintiff reports feeling depressed and down for the past two weeks); 293-97 (August 4, 2015 treatment records: all constitutional, ENT, cardiovascular, respiratory, gastrointestinal, genitourinary, musculoskeletal, neurological and psychiatric findings are normal, vital signs are normal, physical exam is normal, and plaintiff "reports that he is feeling fine and denies any symptoms").

As the ALJ noted, plaintiff's course of treatment – largely consisting of regular prescription medications (primarily for depression, hypertension, and pain) and mental health counseling, was conservative in nature, and plaintiff's medication regimen does not appear to have required any significant adjustment. Although plaintiff ultimately underwent surgical procedures for cubital tunnel syndrome and degenerative disc disease, both appear to have resulted in improved functioning. In 2016, plaintiff underwent at least two surgical procedures on his arms and hands: post-operative testing showed full range of motion, no trigger finger, and diminished grip strength on the right. Plaintiff was treated for continued pain and weakness with a cortisone injection (later

reported to have caused "moderate improvement") and prescribed a right arm/hand brace. (Dkt.
#6 at 367-71, 372, 378). On October 11, 2016, plaintiff's treating orthopedic surgeon cleared him
to return to work with "no specific restriction with regard to his right elbow or hand." (Dkt. #6 at
380).

A December 14, 2016 spinal discectomy surgery was also successful, with post-operative
assessments on December 30, 2016 and April 7, 2017 showing normal strength and sensation in
all four extremities, and plaintiff reporting that he was "extremely pleased" with the results,
indicating that "the neck and right arm pain that he had significantly before surgery has resolved,"
and that "the pain, numbness and tingling, and decreased function issues with his arms on the right-
hand side primarily are also much improved." (Dkt. #6 at 393, 396).

In short, on review of the record, there does not appear to be any substantial evidence, in
the form of treatment records, objective test results, imaging studies, surgical records, or medical
opinion evidence, which supports limitations as extreme as those opined by Dr. Ghazi.

Where, as here, a treating physician's opinion conflicts significantly with the plaintiff's
treatment records and with all other medical opinions of record, those inconsistencies comprise
"good reasons" for the ALJ to discount the opinion. *See generally Brush v. Berryhill*, 294 F.3d
241, 260 (S.D.N.Y. 2018) (ALJ did not err in declining to give controlling weight to opinion of
treating psychiatrist whose contemporaneous treatment notes reflected no extreme limitations).

In summary, I find that the weight given by the ALJ to Dr. Ghazi's opinion was appropriate
and sufficiently explained, and that the ALJ's decision is supported by substantial evidence, and
was not the product of reversible legal error.

**II.     Severity of Plaintiff's Mental Impairments**

Plaintiff also argues that the ALJ erred in relying on the opinion of consulting psychologist Dr. Santarpia, to find that plaintiff's depression and anxiety were "non-severe" impairments.

The Court disagrees. Although Dr. Ghazi's opinion listed depression and anxiety as factors which affected plaintiff's physical condition to an unspecified extent by producing "fatigue and restlessness," (Dkt. #6 at 564-65), neither his opinion nor plaintiff's treatment records suggest that plaintiff's depression and anxiety significantly affected his ability to function on a daily basis. In assessing plaintiff's mental impairments, the ALJ properly applied the special technique, citing to specific supporting evidence of record including plaintiff's educational records, activities of daily living, and objective findings by the consultative psychiatric examiner, and concluded that plaintiff's depression and anxiety resulted in no more than mild limitations in the areas of interacting with others, and maintaining concentration, persistence and pace. (Dkt. #6 at 19-20). Those findings were supported by substantial evidence.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #15) is denied, and the Commissioner's cross motion for judgment on the pleadings

(Dkt. #20) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
September 3, 2020.